**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashraf Elgamal, et al., | No. CV-13-00867-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Rebecca Bernacke, et al., | |
| Defendants. | |

Plaintiffs are Ashraf Elgamal, an Egyptian citizen, his minor child A.E., and his adult child Amanda.[1]  Defendants are Rebecca Bernacke, a United States Citizenship and Immigration Services (USCIS) Fraud Detection National Security Immigration Officer, and Cynthia Harper, an Immigration Services Officer.  Before the Court are the parties' cross-motions for summary judgment.[2]  (Docs. 313, 327, 334, 342.)  The motions are fully briefed, and the Court heard oral argument on May 31, 2016.  On June 21, 2016, the Court announced its rulings from the bench and informed the parties that a written order would follow.  For the following reasons, Bernacke and Harper's motions are granted and Plaintiffs' motions are denied.

---

[1] Amanda Elgamal was a minor during the relevant time period and reached the age of majority in 2013.  (Doc. 314, ¶ 11.)

[2] Bernacke also filed a Motion to Strike Plaintiffs' Reply in Support of Cross-Motion for Summary Judgment.  (Doc. 364.)  The motion is denied as moot because the arguments raised in Plaintiffs' reply do not alter the Court's decision.

**<u>BACKGROUND</u>**

Because this case arises in the context of Plaintiffs' efforts to obtain permanent resident status, a brief overview of relevant immigration procedures is necessary for understanding the issues presented.

**I. Overview of Immigration Procedure**

The Immigration and Nationality Act (INA) establishes "a comprehensive federal statutory scheme for regulation of immigration and naturalization." *Chamber of Commerce of U.S. v. Whiting*, 563 U.S. 582, 587 (2011) (internal quotations and citation omitted). Because "thousands of aliens seek immigrant visas to enter the United States," the INA "imposes numerical quotas on the number of aliens permitted to immigrate to this country." *Azizi v. Thornburgh*, 908 F.2d 1130, 1132 (2d Cir. 1990); 8 U.S.C. § 1151(a). The INA also prioritizes and limits eligibility to certain categories of immigrants, such as those who are family-sponsored or employment-based. *See* 8 U.S.C. § 1153(a)-(b).

For employment-based immigrants, adjustment of status is a three-step process. First, the employer seeking to hire the immigrant must file an immigrant labor certification application, known as a Form 9089, with the Department of Labor (DOL). 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A). If the Form 9089 is approved, the employer next must file a Form I-140 visa petition (I-140) with USCIS. 8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5. Finally, if the I-140 is approved, the immigrant worker may file a Form I-485 application (I-485) with USCIS to adjust his status to lawful permanent resident. 8 U.S.C. § 1255(a); 8 C.F.R. § 245.2.

This process, however, does not guarantee or entitle an immigrant worker to lawful permanent resident status. USCIS may revoke an approved I-140 "at any time, for what [the Secretary of Homeland Security] deems to be good and sufficient cause[.]" 8 U.S.C. § 1155. Additionally, an employer may withdraw an I-140 for any reason and "at any time until a decision is issued by USCIS or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition."

8 C.F.R. § 103.2(b)(6).  If the employer withdraws the I-140 after it has been approved, the approval is automatically revoked.  8 C.F.R. § 205.1(a)(3)(iii)(C).  An immigrant also is ineligible for employment-based adjustment of status if he, among other things, "accepts unauthorized employment prior to filing an application for adjustment of status," "is in unlawful immigration status on the date of filing the application for adjustment of status," or "seeks [employment-based] adjustment of status . . . and is not in a lawful nonimmigrant status."  8. U.S.C. §§ 1255(c).  Finally, even if an I-140 is approved, not withdrawn, and the immigrant is eligible for adjustment of status, he "is in no way entitled to such relief[.]"  *Faddah v. Immigration & Naturalization Serv.*, 580 F.2d 132, 133 (5th Cir. 1978); 8 U.S.C. § 1255(a).

**II.  Factual and Procedure History**

In 2002, Fares Alzubidi hired Elgamal to create business cards and a website for Picture Perfect Gallery (Picture Perfect), which operated a store at Arizona Mills Mall in Tempe, Arizona.  (Doc. 314, ¶¶ 1-3.)  On August 10, 2005, Alzubidi submitted a Form 9089 to DOL requesting approval to hire Elgamal as an Art Director/Web Administrator, which DOL approved on January 6, 2006.  (*Id.*, ¶¶ 4, 6.)  Alzubidi submitted an I-140 to USCIS on January 24, 2006, which was approved on April 19, 2006.  (*Id.*, ¶¶ 7-8.)  On July 6, 2007, Plaintiffs submitted I-485 adjustment of status applications.[3]  (*Id.*, ¶ 9.)

On September 27, 2008, Bernacke and Harper visited Picture Perfect to speak with Alzubidi about Elgamal's connection to marriage fraud allegations.[4]  (*Id.*, ¶ 13; Doc. 335 at 12, ¶ 7.)  Specifically, Elgamal's wife, Marcella Mata, had filed a Form I-130 visa petition (I-130)[5] seeking family-sponsored adjustment of status in May 2002, which was

_____

[3] Elgamal's children filed separate I-485's pursuant to 8 U.S.C. § 1153(d), which automatically grants them "the same status" as Elgamal "if accompanying or following to join" him.  (Doc. 314, ¶ 10.)

[4] Plaintiffs dispute that marriage fraud was discussed during the September 27, 2008 visit.  (Doc. 335 at 2, ¶ 13.)  But Plaintiffs admit that Bernacke discussed marriage fraud allegations with Alzubidi during that visit.  (*Id.* at 12, ¶ 7.)  This fact is not genuinely disputed.

[5] For family-sponsored immigrants, an I-130 serves a similar purpose as an I-140. *See* 8 C.F.R. § 204.1(a)(1).

1    denied in August 2007 after USCIS determined that the marriage was fraudulent.  (Doc.

2    314, ¶¶ 14-15.)  Alzubidi was unaware that USCIS had investigated Elgamal for marriage

3    fraud, and testified that he "became nervous when [he] found out about [the

4    allegations]."[6]  (*Id.*, ¶¶ 17-18.)  Bernacke told Alzubidi that his "organization will look

5    bad" if he hired Elgamal, and asked if he was going to withdraw the I-140.  (*Id.*, ¶ 19.)

6    Alzubidi said he needed a few days to think it over so he could make an informed

7    decision and told Bernacke that he would call her back.  (*Id.*, ¶¶ 20, 33.)  Afterward, he

8    called Elgamal and told him about the visit.  (*Id.*, ¶ 26.)

9        Alzubidi "studied [his] options" and decided to withdraw the I-140.  (*Id.*, ¶ 28.)

10   On October 2, 2008, Alzubidi wrote and signed a written withdrawal letter that stated: "I

11   no longer wish to continue to sponsor [Elgamal] to work for Picture Perfect Gallery."

12   (*Id.*, ¶ 39.)

13       The following day, Elgamal sent an email to the Office for Civil Rights and Civil

14   Liberties (CRCL), in which he alleged that Bernacke and Harper coerced and threatened

15   Alzubidi.  (*Id.*, ¶¶ 108-09.)  That email triggered an internal investigation by CRCL.  (*Id.*,

16   ¶ 112.)

17       On September 8, 2009, USCIS denied Elgamal's I-485 because Alzubidi had

18   withdrawn the underlying I-140.[7]  (*Id.*, ¶ 42.)  On October 6, 2009, Elgamal filed with

19   UCSIS a Motion to Reopen Denied Form I-485 Adjustment of Status Application,

20   pursuant to 8 C.F.R. § 103.5.  (*Id.*, ¶ 44.)  The motion claimed that Alzubidi's withdrawal

21   "was unlawfully obtained by falsehoods, coercion, and threats," in violation of Elgamal's

22   Fifth Amendment due process rights.  (*Id.*, ¶ 45.)  On March 28, 2012, USCIS denied

23   Elgamal's motion as untimely.  (*Id.*, ¶ 47.)  The decision noted that, even if timely, the I-

24   485 "would remain denied due to no pending I-140 visa petition."  (*Id.*, ¶ 48.)

25   ───────────────

26       [6] Plaintiffs claim this fact is disputed, arguing that "Alzubidi's testimony is based
     only on what Defendant Bernacke told him on September 27, 2008."  (Doc. 335, ¶ 18.)
27   But whether Elgamal's marriage was, in fact, fraudulent is not relevant to how Alzubidi
     felt upon learning of the marriage fraud allegations.

28       [7] USCIS also denied Amanda and A.E.'s applications because they no longer had
     derivative beneficiary status.  (Doc. 314, ¶ 43.)

1    Elgamal brought this action on April 29, 2013, originally raising only a single

2    state law claim. (*Id.*, ¶ 49.) On June 20, 2013, he amended his complaint to add his

3    children as plaintiffs and to allege constitutional claims based on allegations that

4    Bernacke and Harper coerced Alzubidi to withdraw the I-140. (*Id.*, ¶¶ 51-52.)

5    On August 13, 2013, USCIS withdrew its September 8, 2009 decision denying

6    Elgamal's I-485. It concluded that, because the I-485 had been pending for more than

7    180 days, INA's "porting" provision afforded Elgamal the opportunity to present

8    evidence of other employment that could serve as the qualifying basis for his

9    application.[8] (*Id.*, ¶¶ 53-54.) Noting its error in denying Elgamal's motion to reopen,

10   USCIS informed Elgamal that his I-485 remained pending and invited him to offer

11   evidence of qualifying new employment. (*Id.*, ¶ 55.)

12   On August 26, 2013, Elgamal submitted evidence that he was employed as an Art

13   Director/Web Administrator for the Arab American Festival Organization (AAFO). (*Id.*,

14   ¶ 56.) On May 20, 2014, USCIS issued a Notice of Intent to Deny Elgamal's I-485,

15   citing several bases for the intended denial. (*Id.*, ¶ 61.) For example, it concluded that

16   Elgamal's new employment did not qualify under the porting provision because it was

17   not "in the same or similar occupational classification as the job for which the [labor]

18   certification was issued."[9] (*Id.*, ¶ 62.) USCIS discovered that Elgamal was AAFO's

19   founder and president, found no evidence that AAFO had a graphics and web design

20

21   _____

[8] Pursuant to 8 U.S.C. § 1154(j), an I-485 that has "remained unadjudicated for

22   180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as

23   the job for which the petition was filed." Congress added this so-called "porting" provision to the INA in 2000 in order to "increase the job flexibility of workers."

24   *Mantena v. Johnson*, 809 F.3d 721, 724 (2d Cir. 2015).

25   [9] Plaintiffs claim to dispute this fact, and many others related to USCIS's re-adjudication of Elgamal's I-485, but fail to identify any admissible evidence that

26   contradicts Bernacke's factual assertions. (*See* Doc. 335, ¶¶ 56, 61-71, 77.) Instead, Plaintiffs accuse USCIS of not adjudicating Elgamal's application in good faith and state

27   that Elgamal "withdrew his acceptance of USCIS' offer to submit evidence of new qualifying employment when he realized that USCIS' August 16, 2013 invitation was not

28   made in good faith." (*Id.*, ¶ 56.) It is beyond dispute, however, that USCIS issued the Notice of Intent to Deny, and that the notice indicated, among other things, that Elgamal's new employment did not qualify under the porting provision.

- 5 -

division, and determined that the job offer was not bona fide because Elgamal had simply created a job offer and hired himself.  (*Id.*, ¶¶ 63, 67-69.)   Additionally, USCIS determined that Elgamal was not eligible to adjust his status because he did not have lawful immigration status at the time he filed his I-485.[10]   (*Id.*, ¶ 74.)   It found that Elgamal's immigration status became unlawful on June 4, 2002, when his previous visitor's visa had expired, and that Elgamal engaged in unauthorized self-employment. (*Id.*, ¶¶ 75, 76.)   USCIS further concluded that, notwithstanding these defects, Elgamal did not merit a favorable adjustment because, among other things, his marriage to Mata was "entered into solely for the purpose of assisting [him] to obtain [his] lawful permanent residence status."  (*Id.*, ¶¶ 77, 83.)

Elgamal did not respond to USCIS's Notice of Intent to Deny, and on October 3, 2014, USCIS issued its final decision denying Elgamal's I-485.  (*Id.*, ¶¶ 93-95.)   In addition to affirming its prior determinations, USCIS denied Elgamal's application based on his failure to respond to the Notice of Intent to Deny.  (*Id.*, ¶ 96.)   Because the application was denied, in part, due to abandonment, USCIS notified Elgamal that he could move to reopen his application within 30 days pursuant to 8 C.F.R. §103.2(b)(15). (*Id.*, ¶ 97.)   USCIS also notified Elgamal that he could request a Notice to Appear to place him in removal proceedings and renew his application before an immigration judge. (*Id.*, ¶ 98.)  On November 4, 2014, Elgamal filed a Motion to Reconsider the denial of his I-485, which USCIS denied.  (*Id.*, ¶¶ 99, 102.)

Plaintiffs bring two claims against Bernacke and Harper, both under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  (*Id.*, ¶¶ 103, 105.)   They allege that Bernacke and Harper deprived them of their Fifth

---

[10] Plaintiffs claim to dispute this fact, but cite only to a report authored by attorney Judy C. Flanagan, in which she opines that the USCIS decision was legally erroneous. (Doc. 335, ¶ 72; Doc. 336 at 5-8.)   Plaintiffs characterize this fact and others as "statements of law or mixed statements of law and fact" that require no response.  (Doc. 335, ¶¶ 62-88.)  Although the legal correctness of USCIS's conclusions might be a mixed question of law and fact, whether USCIS made those conclusions is not.  Plaintiffs might disagree with USCIS's legal conclusions, but it is undisputed that those were the conclusions USCIS reached.

1    Amendment rights to substantive and procedural due process by coercing Alzubidi to

2    withdraw the I-140.  (*Id.*, ¶ 106.)

3                                    **LEGAL STANDARD**

4          Summary judgment is appropriate if the evidence, viewed in the light most

5    favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to

6    any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

7    P. 56(a).  "[A] party seeking summary judgment always bears the initial responsibility of

8    informing the district court of the basis for its motion, and identifying those portions of

9    [the record] which it believes demonstrate the absence of a genuine issue of material

10   fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  When parties submit cross-

11   motions for summary judgment, the court "considers each party's evidentiary showing,

12   regardless of which motion the evidence was tendered under."  *Oakley, Inc. v. Nike, Inc.*,

13   988 F. Supp. 2d 1130, 1134 (C.D. Cal. 2013) (citing *Fair Hous. Council of Riverside*

14   *Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001)).

15         Substantive law determines which facts are material and "[o]nly disputes over

16   facts that might affect the outcome of the suit under the governing law will properly

17   preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

18   242, 248 (1986).  "A fact issue is genuine 'if the evidence is such that a reasonable jury

19   could return a verdict for the nonmoving party.'"  *Villiarimo v. Aloha Island Air, Inc.*,

20   281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248).  The party

21   opposing summary judgment "may not rest upon mere allegations of denials of pleadings,

22   but . . . must set forth specific facts showing that there is a genuine issue for trial."

23   *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R.

24   Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

25   (1986).

26                                      **DISCUSSION**

27         Bernacke argues that she is entitled to summary judgment for five reasons:  (1)

28   *Bivens* does not provide a remedy for due process violations in the context of

immigration status adjustments; (2) even if *Bivens* provides a remedy, Plaintiffs do not have a constitutionally protected property interest in an I-140 or I-485; (3) even if Plaintiffs have a constitutionally protected property interest, Bernacke is entitled to qualified immunity because the relevant constitutional right was not clearly established in 2008; (4) Plaintiffs' claims are time-barred; and (5) no reasonable jury could conclude that Alzubidi felt pressured or coerced to withdraw the I-140, or that Bernacke's actions proximately caused Plaintiffs' injuries.  (Doc. 313.)  Although she separately moved for summary judgment, Harper states that she "adopts, incorporates by reference, and joins" Bernacke's motion entirely.  (Doc. 327 at 1.)  Harper contends that she and Bernacke "are identically situated," and that "Bernacke's factual statements and legal arguments apply with the same force and effect for Harper."  (*Id.*)  The Court agrees and addresses each argument in turn.

## I.  Availability of a *Bivens* Remedy

In *Bivens*, the Supreme Court held that a citizen whose Fourth Amendment rights were violated by a federal officer could sue for damages.  403 U.S. at 396-97.  This marked the first time that the Supreme Court recognized "an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  The Supreme Court has extended *Bivens* only twice:  first to a gender discrimination claim brought under the equal protection component of the Fifth Amendment's Due Process clause, and later to an Eighth Amendment violation by prison officials.  *Davis v. Passman,* 442 U.S. 228, 248-49 (1979); *Carlson v. Green,* 446 U.S. 14, 24-25 (1980).  "Since *Carlson*, however, the Supreme Court has consistently refused to extend *Bivens* liability to any new context or new category of defendants." *W. Radio Servs. Co. v. U.S. Forest Serv.*, 578 F.3d 1116, 1119 (9th Cir. 2009) (internal quotations and citation omitted).   For example, the Supreme Court has declined to extend *Bivens* to claims of First Amendment violations by federal employers, *Bush v. Lucas*, 462 U.S. 367 (1983), and due process violations stemming from wrongful denials of Social Security disability benefits, *Schweiker v.*

*Chilicky*, 487 U.S. 412 (1988).

Cautioning that a "freestanding damages remedy for a claimed constitutional violation . . . is not an automatic entitlement," the Supreme Court has articulated a two-step test for determining whether to recognize a *Bivens* remedy. *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007). First, the Court determines whether there is "any alternative, existing process for protecting the interest[.]" *Id.* "Such an alternative remedy would raise the inference that Congress 'expected the Judiciary to stay its *Bivens* hand[.]'" *W. Radio Servs.*, 578 F.3d at 1120 (quoting *Wilkie*, 551 U.S. at 554.) This is true even if the alternative process does not afford complete relief; "[s]o long as the plaintiff ha[s] an avenue for some redress, bedrock principles of separation of powers foreclose[] judicial imposition of a new substantive liability." *Corr. Servs. Corp.*, 534 U.S. at 69. If the Court finds "that Congress intended a statutory remedial scheme to take the place of a judge-made remedy," the inquiry ends. *See W. Radio Servs.*, 578 F.3d at 1120. If the Court cannot draw this inference, it moves to step two and "asks whether there nevertheless are 'factors counseling hesitation' before devising such an implied right of action." *Id.* (quoting *Wilkie*, 551 U.S. at 550).

Here, there are at least two existing, alternative processes through which Plaintiffs can challenge the revocation of the I-140 and resulting denial of their I-485 applications. First, "Congress has established a substantial, comprehensive, and intricate remedial scheme in the context of immigration." *Arar v. Ashcroft*, 585 F.3d 559, 572 (2d Cir. 2009). The INA provides processes for reviewing or reconsidering the denial or revocation of an I-140 or I-485. *See* 8 C.F.R. 103.3(a)(1); 8 C.F.R. 103.5(a); 8 C.F.R. 204.5(n)(2); 8 C.F.R. 205.2(d); *see also Herrera v. U.S. Citizenship & Immigration Servs.*, 571 F.3d 881, 885 (9th Cir. 2009) (recounting process for appealing revocation of an approved I-140). Indeed, Elgamal availed himself of this procedure in October 2009, when he sought reconsideration of the denial of his I-485 on the basis that Alzubidi was coerced into withdrawing the underlying I-140. (Doc. 314, ¶¶ 44-45.)

Second, the Administrative Procedures Act (APA) allows a district court to "hold

unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "contrary to constitutional right, power, privilege, or immunity."  *See* 5 U.S.C. § 706(2); *Herrera*, 571 F.3d at 885-90 (reviewing revocation of approved I-140 under the APA).  Plaintiffs have availed themselves of this alternative process in Count III of their second amended complaint.[11]  (Doc. 314, ¶¶ 104, 131.)  It is of no moment that the APA does not allow recovery of monetary damages.

> [T]he design of the APA raises the inference that Congress expected the Judiciary to stay its *Bivens* hand and provides a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages, notwithstanding the unavailability of monetary damages against individual officers or the right to a jury trial.

*W. Radio Servs.*, 578 F.3d at 1123 (internal quotations and citation omitted).

Moreover, even if the Court could not infer that Congress intended the INA and the APA to preclude a judge-made remedy, special factors counsel against devising a *Bivens* remedy in this context.  First, "[t]he presence of a deliberately crafted statutory remedial system," such as the INA and the APA, "is one 'special factor' that precludes a *Bivens* remedy."  *Moore v. Glickman*, 113 F.3d 988, 991 (9th Cir. 1997).  Second, "immigration policy and enforcement implicate serious separation of powers concerns," heightening the risk that "a judicially created *Bivens* remedy" will intrude upon the constitutional authority of Congress and the Executive Branch.  *De La Paz v. Coy*, 786 F.3d 367, 379 (5th Cir. 2015).

Accordingly, the Court finds that a *Bivens* remedy is unavailable for persons challenging the revocation or denial of an I-140 or I-485, and therefore Bernacke and Harper are entitled to summary judgment.

## II.  Constitutionally Protected Property Interest

Even if a *Bivens* remedy were available, however, Plaintiffs' claims fail as a

---

[11] Count III is directed at USCIS only, not Bernacke and Harper.  (Doc. 314, ¶¶ 104, 131.)  The APA applies only to federal agencies, not to individual actors.  *See Highland Vill. Parents Grp. v. U.S. Fed. Highway Admin.*, 562 F. Supp. 2d 857, 862 (E.D. Tex. 2008).

matter of law.  To prevail on a *Bivens* claim, a plaintiff must prove that he (1) was deprived of a constitutional right (2) by a federal official (3) acting under color of federal law.  *See Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003).  Plaintiffs' *Bivens* claims are rooted in the Fifth Amendment's Due Process Clause.  "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution."  *Wedges/Ledges of Cal., Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994).  Plaintiffs cannot make this threshold showing.

"To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972).  "[A] benefit is not a protected entitlement if government officials may grant or deny it in their discretion."  *Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005).  Thus, "[a] reasonable expectation of entitlement is determined largely by the language of the statute and the extent to which the entitlement is couched in mandatory terms."  *Ass'n of Orange Cty. Deputy Sheriffs v. Gates*, 716 F.2d 733, 734 (9th Cir. 1983).

Plaintiffs acknowledge that they "had no right to be granted [an I-140] visa petition in the first place or that the approved visa petition guaranteed their obtaining green cards."  (Doc. 334 at 18.)  They argue, however, that "the approved visa petition did entitle them to employment authorization . . . and it constituted a concrete interest in pursuing . . . an adjustment application in the United States[.]"  (*Id.*)  But Plaintiffs' argument conflates two distinct concepts:  (1) the existence of a constitutionally property interest for purposes of the Fifth Amendment's Due Process clause, and (2) a concrete and particularized injury for purposes of Article III standing.  Indeed, Plaintiffs rely almost exclusively on cases addressing whether the denial or revocation of a visa petition confers Article III standing on claimants bringing claims under the APA.  *See Abboud v. INS*, 140 F.3d 843, 847 (9th Cir. 1998); *Kurapati v. USCIS*, 775 F.3d 1255, 1261 (11th

Cir. 2014); *Patel v. USCIS*, 732 F.3d 633, 638 (6th Cir. 2013).  But "whether a party has standing is a separate question from whether a party has an interest protected by the Due Process Clause."  *G & G Fire Sprinklers, Inc. v. Bradshaw*, 156 F.3d 893, 899 n.2 (9th Cir. 1998), *vacated on other grounds*, 526 U.S. 1061 (1999).  Standing to bring a claim depends on whether, as a result of the conduct complaint of, a plaintiff has been injured in a concrete way that can be redressed by a favorable decision.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  Not all injuries are deprivations of constitutional rights, and "not all property interests are protected by the Due Process Clause."  *G & G Fire*, 156 F.3d at 901.  Likewise, "that a party has no constitutionally protected property interest . . . does not mean that it has no standing to bring a claim[.]" *Id.* at 899 n.2.  To argue that Plaintiffs have suffered an injury-in-fact misses the point.

When pressed, Plaintiffs argue that they have a constitutionally protected property interest in the *approved* I-140.  (Doc. 334 at 19; Doc. 360 at 3.)  In other words, although they "had no right to be granted a visa petition in the first place or that the approved visa petition guaranteed their obtaining green cards," (Doc. 334 at 18), Plaintiffs argue that, once USCIS approved the I-140, they reasonably expected that it would not be revoked.

For this proposition, Plaintiffs rely on *Ching v. Mayorkas*, 725 F.3d 1149 (9th Cir. 2013).  In that case, the plaintiffs—Ching, a Chinese immigrant, and her husband, a United States citizen—submitted an I-130, which USCIS denied because Ching's ex-husband had given a statement indicating that his marriage with her was fraudulent.  *Id.* at 1153.  The plaintiffs brought a lawsuit under the APA challenging the denial and arguing, among other things, that their due process rights were violated because they were not given an opportunity to cross-examine Ching's ex-husband before USCIS relied on his statement to deny the I-130.  *Id.* at 1153-54.  On summary judgment, the district court rejected the plaintiffs' due process claim, finding they did not have a constitutionally protected property interest in the I-130.  *Id.* at 1154-55.

The Ninth Circuit reversed and concluded that the plaintiffs had a property interest in the I-130 because the language of the relevant statute created a mandatory entitlement.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Id.* at 1155.  Specifically, 8 U.S.C. § 1154(b) states:

> After an investigation of the facts in each case . . . the Attorney General shall, if he determines that the facts stated in the petition are true and that the alien [o]n behalf of whom the petition is made is an immediate relative specified in section 1151(b) of this title or is eligible for preference under subsection (a) or (b) of section 1153 of this title, approve the petition[.]

The Ninth Circuit reasoned that "[t]he decision of whether to approve an I–130 visa petition is a nondiscretionary one because determinations that require application of law to factual determinations are nondiscretionary."  *Ching*, 725 F.3d at 1155 (internal quotations and citations omitted).  Accordingly, the Court held that "[i]mmediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility.  This protected interest is entitled to the protections of due process."  *Id.* at 1156.

Plaintiffs argue that *Ching* applies equally to Elgamal's I-140.  This case, however, is factually and legally distinguishable.  First, this case does not involve immediate relative status for an alien spouse.  Second, unlike *Ching*, this case does not involve the denial of a visa petition because USCIS had already approved the I-140. (Doc. 314, ¶ 8.)  Instead, this case involves the automatic revocation of USCIS's approval, which was triggered by Alzubidi's withdrawal of the petition.  (*Id.*, ¶¶ 28, 39, 42-43.)  Agency regulations allow an employer to withdraw an I-140, even if it has already been approved, for any reason and at any time until the beneficiary is granted an adjustment of status based on the petition.  8 C.F.R. § 103.2(b)(6).  If the employer withdraws an I-140 after it has been approved, the approval is automatically revoked.  8 C.F.R. § 205.1(a)(3)(iii)(C).  In light these provisions, Plaintiffs could not have had a reasonable expectation that the I-140 approval would not be revoked.  *See Karpeeva v. U.S. Dep't of Homeland Sec. Citizenship & Immigration Servs.*, 432 F. App'x 919, 925 (11th Cir. 2011) ("[A]n alien's expectation that the approval of his or her I-140 petition will not be revoked does not give rise to a liberty or property interest protected by the Fifth Amendment.").  Bernacke and Harper, therefore, are entitled to summary judgment

- 13 -

1   because Plaintiffs' cannot establish a necessary, threshold element of their *Bivens* claims.

2   **III.  Qualified Immunity**

3          Next, assuming that Plaintiffs had a constitutionally protected property interest in

4   the approved I-140, and assuming that Bernacke and Harper coerced Alzubidi to

5   withdraw that petition in the manner alleged, Bernacke and Harper are entitled to

6   qualified immunity.

7          An official . . . is entitled to qualified immunity unless it is shown that the
            official violated a statutory or constitutional right that was clearly
8          established at the time of the challenged conduct.  And a defendant cannot
            be said to have violated a clearly established right unless the right's
9          contours were sufficiently definite that any reasonable official in the
            defendant's shoes would have understood that he was violating it.
10

11   *Plumhoff v. Rickard*, -- U.S. --, --, 134 S. Ct. 2012, 2023 (2014) (internal quotations and

12   citation omitted).  For a right to be clearly established, "existing precedent must have

13   placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563

14   U.S. 731, at 741 (2011).

15          Plaintiffs claim that Bernacke and Harper coerced Alzubidi into withdrawing the

16   I-140 in 2008.  *Ching*, however, was decided in 2013.  Indeed, to this day existing

17   precedent has not placed the constitutional question beyond debate.  The Supreme Court

18   has not decided whether a visa petition beneficiary has Fifth Amendment due process

19   rights in that petition, or whether the decision to grant, deny, or revoke a petition is

20   nondiscretionary.  Moreover, many courts have determined that no due process rights

21   attach in this context.  *See Musunuru v. Holder*, 81 F. Supp. 3d 721, 728-29 (E.D. Wis.

22   2015) ("Because petitioner's interest regarding revocation of an I-140 petition is subject

23   to administrative discretion, petitioner does not have a property interest entitled to

24   constitutional protection nor any constitutionally protected procedural rights associated

25   with the government's decision to revoke it."); *Patel v. Johnson*, 2 F. Supp. 3d 108, 127

26   (D. Mass. 2014) ("There is no [constitutionally protected] property interest in an I-140

27   petition."); *Gene's Mach., Inc. v. Dep't of Homeland Sec.*, No. CIV A. V-11-4, 2012 WL

28   1067557, at *10 (S.D. Tex. Mar. 28, 2012) (finding no "constitutionally protected interest

in obtaining an approved I-140 petition"); *Karpeeva*, 432 F. App'x at 925 (same). Accordingly, assuming Plaintiffs' version of the facts is true and that *Ching* applies in the manner they argue, summary judgment for Bernacke and Harper is nonetheless appropriate because they are entitled to qualified immunity.

**IV.  Statute of Limitations**

Additionally, Plaintiffs' *Bivens* claims are time-barred.  In a *Bivens* action, state personal injury law provides the statute of limitations, but federal law determines when a claim accrues.  *Van Strum v. Lawn*, 940 F.2d 406, 410 (9th Cir. 1991); *Morales v. City of L.A.*, 214 F.3d 1151, 1154 (9th Cir. 2000).  Arizona has a two-year statute of limitations for personal injury actions.  A.R.S. § 12-542.  "Statutes of limitation normally begin to run when a claim accrues—that is, when the cause of action is complete with all its elements." *Hamilton Materials, Inc. v. Dow Chem. Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007) (internal quotations and citation omitted).  "As a general rule, a claim accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Hensley v. United States*, 531 F.3d 1052, 1056 (9th Cir. 2008) (internal quotations and citation omitted).

Here, Plaintiffs claim that Bernacke and Harper coerced Alzubidi between September 26, 2008 and October 7, 2008.  (Doc. 314, ¶ 135.)  They also claim that Alzubidi told Elgamal about the visit shortly thereafter, and that Elgamal filed a complaint with CRCL on October 3, 2008, alleging that Bernacke and Harper had pressured Alzubidi.  (*Id.*, ¶ 136.)  Alzubidi withdrew the I-140 on October 7, 2008, and Plaintiffs' I-485 applications were denied on September 8, 2009.  (*Id.*, ¶ 137.)  Thus, Plaintiffs' *Bivens* claims accrued, at the latest, by September 8, 2009.  They did not file this action, however, until April 29, 2013—well over three years later.  (Doc. 1.)  Even then, Plaintiffs did not raise their *Bivens* claims until June 20, 2013.[12]   (Doc. 9.)

Indeed, the Court has reached this same conclusion before.  On January 9, 2014,

---

[12] Amanda and A.E.'s claims are likewise time-barred.  *See Zavala By & Through Ruiz v. United States*, 876 F.2d 780, 782 (9th Cir. 1989) ("When the plaintiff is a minor, [her] parents' knowledge of the injuries is imputed to [her].").

Plaintiffs filed a separate lawsuit (*Elgamal II*) against the United States alleging claims under the Federal Tort Claims Act (FTCA).  (Doc. 7 in 2:14-cv-00040-DLR; Doc. 314, ¶¶ 57-58.)   These FTCA claims were based, in part, on the same allegations that Bernacke and Harper coerced Alzubidi into withdrawing the I-140.  (Doc. 314, ¶ 59.) The Court subsequently consolidated *Elgamal II* with this case.  (*Id.*, ¶ 60; Docs. 78, 108, 167.)   The Court determined that the same statute of limitations and accrual standard applied to Plaintiffs' FTCA claims, and found that the claims were time-barred because they had accrued, at the latest, by September 8, 2009.  (Doc. 167 at 5.)  The Court also rejected Plaintiffs' equitable tolling arguments and their contention that they did not know of the claim until December 23, 2012, when Elgamal obtained an internal memorandum from CRCL's investigation.   (*Id.* at 6-7.)   Elgamal raises the same unavailing arguments now and asks the Court to reconsider its statute of limitations ruling.  (Doc. 334 at 13-17.)  Plaintiffs previously asked the Court to reconsider its statute of limitations order, which it declined to do.  (Docs. 169, 173.)   The Court declines Plaintiffs' renewed invitation.  Bernacke and Harper are entitled to summary judgment because Plaintiffs' *Bivens* claims are time-barred.

**V.  Merits**

Finally, assuming Plaintiffs' claims are supported by law and not time-barred, no reasonable jury could conclude that Alzubidi felt pressured or coerced to withdraw the I-140, or that the withdrawal caused Plaintiffs' alleged injuries.

Alzubidi testified that he "wasn't under any pressure from any of the officers to withdraw the application," that he did not interpret Bernacke's communications as coercive or threatening, and that he decided to withdraw the I-140 independently.  (Doc. 314, ¶¶ 21-22, 36, 117-18, 128.)   Indeed, upon reading the allegations in Plaintiffs' second amended complaint, Alzubidi testified that "[i]t's the opposite of the truth," "[i]t's not what happened," and "[n]othing in the [c]omplaint is right."  (*Id.*, ¶ 116.)  Plaintiffs do not dispute that this is Alzubidi's sworn testimony.  Instead, they challenge the veracity and reliability of Alzubidi's testimony by citing to two documents:  (1) a Record

of Investigation (ROI) prepared by USCIS's Office of Security and Integrity (OSI) in response to Elgamal's allegations that agents coerced the withdrawal of the I-140, (Doc. 309-2 at 81-91), and (2) an internal memorandum prepared by CRCL (CRCL Memo) addressing Elgamal's complaint, (Doc. 325-1 at 2-4).

The ROI summarizes statements purportedly made by Elgamal, Alzubidi, Harper, and Bernacke during the course of OSI's investigation into Elgamal's complaint. The CRCL Memo largely was based on the contents of the ROI. Both documents are subject to multiple levels of hearsay objections. Assuming, however, that the ROI, the CRCL Memo, and the statements contained therein are admissible, a reasonable jury still could not conclude that Alzubidi felt threatened, pressured, or coerced into withdrawing the I-140. According to the ROI, Alzubidi told investigators that "he did not feel threatened," and that he withdrew the I-140 petition "because he did not want his company associated with someone who was involved in marriage fraud." (Doc. 309-2 at 83-84.) He "described the behavior of the USCIS officers as professional and he did not feel threatened by them." (*Id.* at 84.) Likewise, although the CRCL Memo concluded it was likely that Bernacke "invoke[ed] the possibility of extra scrutiny of [Alzubidi's] business if he refused" to withdraw the I-140, it also reported that Alzubidi told investigators "he did not feel threatened by . . . Bernacke's remark that his business would be scrutinized if he did not withdraw the I-140[.]" (Doc. 325-1 at 3.) Rather, "Alzubidi said he withdrew his I-140 based on information provided to him by USCIS officers; he did not claim or even mention harassment, intimidation, or threats." (*Id.*)

Alzubidi has repeatedly denied feeling pressured, harassed, threatened, coerced, or intimidated into withdrawing the I-140. In light of Alzubidi's sworn deposition testimony and the statements attributed to him by the OSI investigators, there simply is no evidentiary support for Plaintiffs' claim that Alzubidi felt harassed, intimidated, threatened, pressured, or coerced into withdrawing the I-140.

Lastly, even if Alzubidi felt pressured to withdraw the I-140, Bernacke and Harper still would be entitled to summary judgment because Plaintiffs cannot show that the

alleged coercion proximately caused their injuries.  Plaintiffs' alleged damages are lost wages and emotional distress resulting from the ultimate denial of their adjustment of status applications.  (Doc. 314, ¶ 134.)  But USCIS reinstated Elgamal's I-485 in August 2013 and allowed him to present evidence of new qualifying employment.  (*Id.*, ¶ 55.)  Ultimately, USCIS denied Elgamal's I-485 for several reasons wholly independent from Alzubidi's withdrawal of the I-140.  For example, USCIS determined that Elgamal was not eligible to adjust his status because he did not have lawful immigration status at the time he filed his I-485 application.  (*Id.*, ¶¶ 74-75.)  USCIS also determined that Elgamal engaged in unauthorized self-employment, and that he did not merit a favorable adjustment.  (*Id.*, ¶¶ 76-77, 83.)  Although Plaintiffs quarrel with the legal correctness of USCIS's determinations, they cannot genuinely dispute that USCIS made those conclusions in denying Elgamal's I-485.  Accordingly, no reasonable jury could find for Plaintiffs on the evidence presented.

## CONCLUSION

For the foregoing reasons, Bernacke and Harper are entitled to summary judgment on all claims against them.

**IT IS ORDERD** that Bernacke's Motion for Summary Judgment, (Doc. 313), is **GRANTED**, Bernacke's Motion to Strike, (Doc. 364), is **DENIED**, Harper's Motion for Summary Judgment, (Doc. 327), is **GRANTED**, and Plaintiffs' Cross-Motions for Summary Judgment, (Docs. 334, 342), are **DENIED**.

Dated this 14th day of July, 2016.

Douglas L. Rayes
United States District Judge