**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashraf Elgamal, et al., | No. CV-13-00867-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Rebecca Bernacke, et al., | |
| Defendants. | |

Plaintiffs are Ashraf Elgamal, an Egyptian citizen, his minor child A.E., and his adult child Amanda. Defendant is Jeffrey Blumberg, Compliance Director for the Office of Civil Rights and Civil Liberties (CRCL). Before the Court are the parties' cross-motions for summary judgment. (Docs. 308, 320.) The motions are fully briefed, and the Court heard oral argument on May 31, 2016. On June 21, 2016, the Court announced its rulings from the bench and informed the parties that a written order would follow. For the following reasons, Blumberg's motion is granted and Plaintiffs' motion is denied.

## **BACKGROUND**

This case arises out of Plaintiffs' efforts to secure employment-based permanent resident status. Under the Immigration and Nationality Act (INA), employment-based adjustment of immigration status is a three-step process. First, an employer seeking to hire the immigrant files an immigrant labor certification application, known as a Form 9089, with the Department of Labor. 8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A). If the

Form 9089 is approved, the employer next files a Form I-140 visa petition (I-140) on behalf of the immigrant with the United States Citizenship and Immigration Service (USCIS).  8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5.  Finally, if the I-140 is approved, the immigrant worker may file a Form I-485 application (I-485) with USCIS to adjust his status to lawful permanent resident.  8 U.S.C. § 1255(a); 8 C.F.R. § 245.2.  This process, however, does not guarantee or entitle an immigrant worker to lawful permanent resident status.  USCIS may revoke an approved I-140 "at any time, for what [the Secretary of Homeland Security] deems to be good and sufficient cause[.]"  8 U.S.C. § 1155.  An employer may withdraw an I-140 for any reason and "at any time until a decision is issued by USCIS or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition."  8 C.F.R. § 103.2(b)(6).  If the employer withdraws the I-140 after it has been approved, the approval is automatically revoked.  8 C.F.R. § 205.1(a)(3)(iii)(C).  An immigrant may also be found ineligible for or not deserving of employment-based adjustment of status.  8 U.S.C. § 1255(a), (c).

In 2006, Fares Alzubidi, owner of Picture Perfect, Inc., submitted an I-140 on behalf of Elgamal, which USCIS approved in April of that year.  (Doc. 309, ¶ 1; Doc. 321 at 6, ¶ 1.)  Plaintiffs subsequently filed I-485 adjustment of status applications based on the I-140.[1]  (Doc. 321 at 6, ¶ 4.)

In September 2008, USCIS agents Rebecca Bernacke and Cynthia Harper visited Picture Perfect and spoke with Alzubidi.  (Doc. 309, ¶ 2; Doc. 321 at 6, ¶ 5.)  Bernacke and Harper asked if Alzubidi would withdraw the I-140 because Elgamal was not performing any work for him.  (Doc. 321 at 6, ¶ 5.)  Alzubidi responded that he did not intend to employ Elgamal until he received his green card.  (*Id.,* ¶ 6.)  Bernacke and Harper also informed Alzubidi that they suspected Elgamal was involved in marriage fraud, and suggested that Alzubidi's "organization would look bad" if he hired him.

---

[1] Under 8 U.S.C. § 1153(d), Elgamal's children automatically were granted "the same status" because they were "accompanying or following to join" him.

(Doc. 309, ¶¶ 3-4; Doc. 321 at 6-7, ¶¶ 7, 9.)

On October 2, 2008, Alzubidi contacted Bernacke, told her that he would be withdrawing the I-140, and later signed a written withdrawal form. (Doc. 309, ¶¶ 6-7.) According to Alzubidi, he "wasn't under any pressure to withdraw" the I-140, he construed Bernacke's comments as advice, not as a threat, and he reached his decision independently. (*Id.*, ¶¶ 12-14.) Because of the withdrawal, Plaintiffs' I-485 applications were denied. (*Id.*, ¶ 8.)

On October 3, 2008—the day after Alzubidi withdrew the I-140—Elgamal sent an email to CRCL Compliance Investigator Sara Lilly accusing Bernacke and Harper of threatening Alzubidi and coercing the I-140 withdrawal. (*Id.*, ¶¶ 15, 18.) The following month, CRCL Acting Director for Review and Compliance William P. McKenney sent a letter to immigration attorney Anita Justin, who was representing Elgamal at the time, acknowledging receipt of Elgamal's complaint and informing her that the matter had been referred to USCIS for investigation. (*Id.*, ¶¶ 19-20.) The letter also explained that "[u]nder 6 U.S.C. [§] 345 and 42 U.S.C. [§] 2000ee-1, no legal or procedural rights or remedies are provided to individuals. Accordingly, this Office may not obtain any legal remedies, damages or other relief on behalf of an individual." (*Id.*, ¶ 21.) Elgamal received a copy of this letter, reviewed it with his attorney, and understood it.[2] (*Id.*, ¶ 22.)

CRCL referred Elgamal's complaint to USCIS's Office of Security and Integrity (OSI), which assigned the matter to Special Agent Donna Hoshide. (*Id.*, ¶ 25.) During the course of her investigation, Hoshide interviewed Elgamal, Alzubidi, Bernacke, and Harper. (*Id.*, ¶ 26.) On June 25, 2009, Hoshide summarized her findings in a Report of Investigation (ROI). (*Id.*) According to the ROI, Bernacke and Harper visited Picture Perfect and asked Alzubidi if he would withdraw the I-140 because Elgamal was not performing any work for him. (Doc. 309-2 at 83, 86.) Alzubidi explained that he did not

---

[2] While Elgamal's complaint was under investigation, he was advised again, this time by Lilly via email, that CRCL "does not provide legal or procedural rights or remedies to complainants." (Doc. 309, ¶¶ 23-24.)

intend to employ Elgamal until he received his work permit. (*Id.* at 83.) Bernacke and Harper informed Alzubidi of marriage fraud allegations against Elgamal, and explained that if Alzubidi maintained his I-140 petition on behalf of Elgamal, his business could be scrutinized in the future and "it would not look good for his company." (*Id.* at 83, 86.) Alzubidi "described the behavior of [Bernacke and Harper] as professional," and denied feeling threatened by them. (*Id.* at 83-84.) He said he withdrew the I-140 "because he did not want his company associated with someone who was involved in marriage fraud." (*Id.* at 84.) He also "he did not want to jeopardize the outcome of any future I-140 petitions[.]" (*Id.*)

OSI forwarded the ROI to CRCL in December 2009. (Doc. 321 at 10, ¶ 30.) For roughly two years thereafter, CRCL worked to prepare a "Close Letter" to Elgamal regarding his complaint. (Doc. 309, ¶¶ 33-34; Doc. 321 at 10-11, ¶¶ 32-61.) During this process, Lilly and other CRCL staffers prepared a memorandum (CRCL Memo) that summarized the investigation into Elgamal's complaint. (Doc. 309, ¶ 30; Doc. 321 at 11, ¶ 43.) The CRCL Memo said it was likely that Bernacke and Harper suggested Alzubidi's business would be scrutinized more closely in the future if he maintained the I-140 on behalf of Elgamal, but found "no evidence that the conversation was threatening, heated, or harassing." (Doc. 325-1 at 3.) According to the CRCL Memo, "Alzubidi told . . . USCIS OSI that he did not feel threatened by . . . Bernacke's remark that his business would be scrutinized if he did not withdraw the I-140 for . . . Elgamal." (*Id.*) Instead, "in a sworn statement taken by OSI, . . . Alzubidi said he withdrew his I-140 based on information provided to him by USCIS officers; he did not claim or even mention harassment, intimidation, or threats." (*Id.*) Although the CRCL Memo found that "invoking the possibility of extra scrutiny of [Alzubidi's business]," would have been inappropriate if it occurred, it nonetheless concluded that Bernacke and Harper's encounter with Alzubidi did not violated Elgamal's procedural rights because 8 C.F.R. §103.2(b)(6) allows an I-140 petitioner to withdraw the petition at any time before the beneficiary is granted adjustment of status. (*Id.* at 4.)

Blumberg became CRCL's Compliance Director in 2010, after the completion of USCIS's investigation of Elgamal's complaint. (Doc. 309, ¶ 31.) He reviewed the CRCL Memo and at least a portion of ROI, after which he "concluded that [CRCL] couldn't conclusively substantiate" Elgamal's allegations because CRCL "had one person saying one thing" and "another person saying another." (*Id.*, ¶ 33.) On March 2, 2012, Blumberg sent Elgamal a Close Letter that recounted the investigatory steps taken in response to Elgamal's complaint, explained the resulting policy recommendations CRCL made to USCIS, and informed Elgamal that his complaint was now closed. (*Id.*, ¶¶ 34-35.) Specifically, the Close Letter stated:

> In order to resolve your complaint, CRCL attempted to determine whether USCIS personnel pressured your prospective employer to withdraw your I-140 petition using threatening or pressuring tactics, including additional scrutiny of your prospective employer's business. Although CRCL could not conclusively substantiate your allegation that you were denied due process as a result of the actions of USCIS employees in regard to you or your prospective employer, we had made a recommendation to USCIS that relates to your complaint. Specifically, CRCL recommended that relevant policy should forbid using threats of future enforcement activity to pressure applicants or petitioners. Further, CRCL recommended that USCIS should effectively provide current FDNS officers with guidance on appropriate conduct, and incorporate this guidance into the training curriculum provided to new officers.
>
> . . .
>
> As we have stated in prior letters to you, CRCL is not able to obtain any legal remedies or damages on your behalf, and cannot provide individual immigration relief. Our complaint process attempts to analyze potential problems with DHS policy and its implementation. Consequently, we are pleased to inform you that USCIS has concurred with the recommendations stated above.

(*Id.*, ¶¶ 35-36.)

Elgamal brought this action on April 29, 2013, originally raising only a single state law claim against Bernacke, Harper, and another USCIS employee. (Doc. 1.) On June 20, 2013, he amended his complaint to add his children as plaintiffs and to allege constitutional claims based on allegations that Bernacke and Harper coerced Alzubidi to withdraw the I-140. (Doc. 9.) On November 18, 2014, Plaintiffs filed a second amended complaint, which, in relevant part, added Blumberg as a defendant. (Doc. 143.)

1  Plaintiffs bring two claims against Blumberg, both under *Bivens v. Six Unknown Named
2  Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). (*Id.*, ¶¶ 140-166.) They
3  allege that Blumberg deprived them of their Fifth Amendment rights to substantive and
4  procedural due process by "condoning and/or covering up the coercion of . . . Alzubidi to
5  withdraw the approved I-140 visa petition," "causing delay," and "lying to Plaintiffs
6  about the results of the investigation." (*Id.*, ¶¶ 146-48, 159.)

## **LEGAL STANDARD**

8  Summary judgment is appropriate if the evidence, viewed in the light most
9  favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to
10 any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ.
11 P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of
12 informing the district court of the basis for its motion, and identifying those portions of
13 [the record] which it believes demonstrate the absence of a genuine issue of material
14 fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When parties submit cross-
15 motions for summary judgment, the court "considers each party's evidentiary showing,
16 regardless of which motion the evidence was tendered under." *Oakley, Inc. v. Nike, Inc.*,
17 988 F. Supp. 2d 1130, 1134 (C.D. Cal. 2013) (citing *Fair Hous. Council of Riverside
18 Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001)).

19 Substantive law determines which facts are material and "[o]nly disputes over
20 facts that might affect the outcome of the suit under the governing law will properly
21 preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.
22 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury
23 could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*,
24 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). The party
25 opposing summary judgment "may not rest upon mere allegations of denials of pleadings,
26 but . . . must set forth specific facts showing that there is a genuine issue for trial."
27 *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R.
28 Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87

(1986).

## DISCUSSION

In a *Bivens* action, a plaintiff must prove that he (1) was deprived of a constitutional right (2) by a federal official (3) acting under color of federal law. *See Morgan v. United States*, 323 F.3d 776, 780 (9th Cir. 2003). Here, Plaintiffs claim that Blumberg, acting under color of federal law, deprived them of their Fifth Amendment substantive and procedural due process rights. "A threshold requirement to a substantive or procedural due process claim is the plaintiff's showing of a liberty or property interest protected by the Constitution." *Wedges/Ledges of Cal., Inc. v. City of Phx.*, 24 F.3d 56, 62 (9th Cir. 1994). Plaintiffs cannot make this threshold showing.

Plaintiffs' argue that they had a constitutionally protected property interest in the approved I-140. (Doc. 320 at 19.) They claim that Bernacke and Harper deprived them of that property interest by coercing Alzubidi to withdraw the petition, and that Blumberg "aided, abetted and compounded th[is] egregious misconduct. . . by issuing a close letter that that he knew misrepresented the results of CRCL's investigation." (*Id.* at 2.) On July 14, 2016, however, the Court rejected these arguments in an order granting summary judgment for Bernacke and Harper. (Doc. 389.) The Court concluded that "a *Bivens* remedy is unavailable for persons challenging the revocation or denial of an I-140 or I-485," because the INA and the Administrative Procedures Act (APA) provide alternative processes through which Plaintiffs could have challenged the revocation of the I-140 and resulting denial of their I-485 applications. (*Id.* at 8-10.) Assuming a *Bivens* remedy were available, the Court concluded that Plaintiffs' had no constitutionally protected property interest in the approved I-140, and that if such a constitutional right did exist, Bernacke and Harper were entitled to qualified immunity because the right was not clearly established during the relevant time period, nor is its existence beyond debate today. (*Id.* at 10-15.) Finally, the Court found that "no reasonable jury could conclude that Alzubidi felt pressured or coerced to withdraw the I-140, or that the withdrawal caused Plaintiffs' alleged injuries." (*Id.* at 16-18.) In both his statements to OSI

investigators and his deposition in this case, "Alzubidi has repeatedly denied feeling pressured, harassed, threatened, coerced, or intimidated into withdrawing the I-140." (*Id.* at 17.) Furthermore, "USCIS reinstated Elgamal's I-485 in August 2013 and allowed him to present evidence of new qualifying employment," but ultimately denied the application "for several reasons wholly independent from Alzubidi's withdrawal of the I-140." (*Id.* at 18.) This analysis applies with equal force to Plaintiffs' claims against Blumberg and is incorporated herein. Blumberg cannot be liable under *Bivens* for aiding and abetting constitutional violations allegedly committed by Bernacke and Harper when the Court has already concluded that Bernacke and Harper did not violate Plaintiffs' constitutional rights.

Moreover, Plaintiffs fail to explain how Blumberg's actions caused them any independent harm. CRCL repeatedly advised Elgamal that it does not provide legal or procedural rights or remedies to complainants, and cannot provide individual immigration relief. Blumberg had no authority to intervene in Plaintiffs' adjustment of status proceedings. Plaintiffs do not explain how their situation would have changed had Blumberg sent Elgamal a Close Letter that confirmed his version of events. The I-140 would remain withdrawn, and USCIS still would have denied Elgamal's I-145 application. Plaintiffs rightly concede that they "had no right in how the [CRCL] investigation was conducted or its outcome." (Doc. 345 at 3.)

Accordingly, Blumberg is entitled to summary judgment for the reasons stated in parts I, II, III, and V of the Court's order granting summary judgment for Bernacke and Harper. (Doc. 389.) Specifically, (1) a *Bivens* remedy is unavailable under these circumstances, (2) Plaintiffs did not have a constitutionally protected property interest in the approved I-140, (3) if such a constitutional right exists, Blumberg is entitled to qualified immunity because the right was not clearly established then, nor is the question beyond debate now, and (4) no reasonable jury could conclude that Alzubidi felt pressured or coerced into withdrawing the I-140, or that Blumberg's actions proximately

caused Plaintiffs' alleged injuries.[3] CRCL could not have been clearer about its inability to provide legal or procedural rights or remedies to complainants, and Plaintiffs explicitly deny that they had any constitutionally protected interest in the CRCL investigation or its outcome. (*See* Doc. 320 at 3, 11; Doc. 345 at 3.)

## CONCLUSION

For the foregoing reasons, Blumberg is entitled to summary judgment on all claims against him.

**IT IS ORDERED** that Blumberg's motion for summary judgment, (Doc. 308), is **GRANTED**, and Plaintiffs' cross-motion for summary judgment, (Doc. 320), is **DENIED**.

Dated this 25th day of July, 2016.

Douglas L. Rayes
United States District Judge

---

[3] In its prior order, the Court also found that Plaintiffs' claims against Bernacke and Harper were time-barred. (Doc. 389 at 15-16.) That analysis is not incorporated here because Plaintiffs' claims against Blumberg are based on his involvement in the preparation of the Close Letter. Neither party has analyzed whether a claim based on actions taken between 2010 and 2012 would be time-barred. The Court, therefore, expresses no opinion on the timeliness of Plaintiffs' claims against Blumberg.