**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Ashraf Elgamal, et al., | No. CV-13-00867-PHX-DLR |
| Plaintiffs, | **ORDER** |
| v. | |
| Rebecca Bernacke, et al., | |
| Defendants. | |

Plaintiffs are Ashraf Elgamal, an Egyptian citizen, his minor child A.E., and his adult child Amanda. Defendants are Secretary of Homeland Security Jeh Johnson, Director of United States Citizen and Immigration Services (USCIS) Leon Rodriguez, and USCIS Phoenix Field Office Director John Ramirez, sued in their official capacities. Before the Court are the parties' cross-motions for summary judgment. (Docs. 332, 347.) The motions are fully briefed, and the Court heard oral argument on May 31, 2016. On June 21, 2016, the Court announced its rulings from the bench and informed the parties that a written order would follow. For the following reasons, Defendants' motion is granted and Plaintiffs' motion is denied.

## **BACKGROUND**

This case arises out of Plaintiffs' efforts to secure employment-based permanent resident status. Under the Immigration and Nationality Act (INA), employment-based adjustment of immigration status is a three-step process. First, an employer seeking to

hire the immigrant files an immigrant labor certification application, known as a Form 9089, with the Department of Labor (DOL).  8 U.S.C. §§ 1153(b)(3)(C), 1182(a)(5)(A). If the Form 9089 is approved, the employer next files a Form I-140 visa petition (I-140) on behalf of the immigrant with USCIS.  8 U.S.C. § 1154(a)(1)(F); 8 C.F.R. § 204.5. Finally, if the I-140 is approved, the immigrant worker may file a Form I-485 application with USCIS to adjust his status to lawful permanent resident.[1]  8 U.S.C. § 1255(a); 8 C.F.R. § 245.2.

This process, however, does not guarantee or entitle an immigrant worker to lawful permanent resident status.  USCIS may revoke an approved I-140 "at any time, for what [the Secretary of Homeland Security] deems to be good and sufficient cause[.]"  8 U.S.C. § 1155.  An employer may withdraw an I-140 for any reason and "at any time until a decision is issued by USCIS or, in the case of an approved petition, until the person is admitted or granted adjustment or change of status, based on the petition."  8 C.F.R. § 103.2(b)(6).  If the employer withdraws the I-140 after it has been approved, the approval is automatically revoked.  8 C.F.R. § 205.1(a)(3)(iii)(C).  An immigrant may also be found ineligible for or not deserving of employment-based adjustment of status. 8 U.S.C. § 1255(a), (c).

In 2005, Fares Alzubidi agreed to sponsor Elgamal for employment with Alzubidi's company, Picture Perfect, Inc.  (Doc. 333, ¶ 8.)  Alzubidi filed a Form 9089 with DOL, which was approved in January 2006.  (348 at 4, ¶¶ 1-2.)  Thereafter, Picture Perfect filed an I-140 on behalf of Elgamal, which USCIS approved in April 2006.  (Doc. 333, ¶ 9; Doc. 348 at 5, ¶¶ 4, 6.)  In July 2006, Plaintiffs filed I-485 adjustment of status applications based on the approved I-140.  (Doc. 348 at 5, ¶ 7.)  Alzubidi withdrew the I-140 in October 2008.  (Doc. 333, ¶ 16.)  Pursuant to 8 C.F.R. § 205.1(a)(3)(iii)(C), USCIS automatically revoked its approval of the I-140 and, consequently, denied Plaintiffs' I-485 adjustment of status applications.  (*Id.*, ¶ 18.)  In October 2009, Plaintiffs

---

[1] Under 8 U.S.C. § 1153(d), an immigrant's children are automatically granted "the same status" as their parent if "accompanying or following to join" him.

filed a motion to reconsider the denial of their I-485 applications, which was denied. (Doc. 348 at 10-11, ¶ 40.)

In August 2013, USCIS withdrew its decision denying Elgamal's adjustment application and allowed him to apply for adjustment based on new qualifying employment pursuant to 8 U.S.C. § 1154(j).[2] (Doc. 333, ¶ 19.) Elgamal then filed a request to change his employment-based visa petition from the Picture Perfect position to a job as art director/web administrator for the Arab American Festival (AAF), an organization that Elgamal founded and for which he acts as President and Chief Executive Officer. (*Id.*, ¶¶ 20-21.) In May 2014, USCIS issued a Notice of Intent to Deny (NOID) Elgamal's re-opened adjustment of status application. (*Id.*, ¶ 23.) Ultimately, USCIS issued a decision in October 2014 denying Plaintiffs' re-opened adjustment applications. (*Id.*, ¶ 25.)

Elgamal brought this action on April 29, 2013, originally raising only a state law claim against several USCIS employees. (Doc. 1.) On June 20, 2013, he amended his complaint to add his children as plaintiffs and to allege, as relevant here, a claim against Defendants under the Administrative Procedures Act (APA), 5 U.S.C. § 706. (Doc. 9.) On November 18, 2014, Plaintiffs filed a second amended complaint, which is the operative complaint in this lawsuit. (Doc. 143.) Plaintiffs do not challenge USCIS's October 2014 decision denying their re-opened adjustment applications. (Doc. 333, ¶ 26.) Instead, Plaintiffs challenge the earlier, withdrawn denial, and allege that Defendants (1) failed to advise them of the INA's porting provisions and to give them notice and opportunity to rebut the reason for the original denial of their adjustment applications, (2) unlawfully denied their October 2009 motion to reconsider the denial of their adjustment applications, and (3) are unlawfully delaying or withholding approval of

---

[2] Commonly referred to as the "porting provision," 8 U.S.C. § 1154(j) provides that an I-485 that has "remained unadjudicated for 180 days or more shall remain valid with respect to a new job if the individual changes jobs or employers if the new job is in the same or a similar occupational classification as the job for which the petition was filed." Congress added this provision to the INA in 2000 in order to "increase the job flexibility of workers." *Mantena v. Johnson*, 809 F.3d 721, 724 (2d Cir. 2015).

their adjustment applications. (Doc. 143, ¶¶ 167-173.) For this, Plaintiffs seek damages, relief under the Declaratory Judgments Act (DJA), 28 U.S.C. § 2201, and *nunc pro tunc* relief. (*Id.*, ¶¶ 174-198.) The parties now cross-move for summary judgment on Plaintiffs' APA claim and corresponding requests for relief. (Docs. 332, 347.)

## **LEGAL STANDARD**

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). When parties submit cross-motions for summary judgment, the court "considers each party's evidentiary showing, regardless of which motion the evidence was tendered under." *Oakley, Inc. v. Nike, Inc.*, 988 F. Supp. 2d 1130, 1134 (C.D. Cal. 2013) (citing *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136-37 (9th Cir. 2001)).

Substantive law determines which facts are material and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact issue is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Anderson*, 477 U.S. at 248). The party opposing summary judgment "may not rest upon mere allegations of denials of pleadings, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Brinson v. Linda Rose Joint Venture*, 53 F.3d 1044, 1049 (9th Cir. 1995); *see also* Fed. R. Civ. P. 56(e); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986).

## **DISCUSSION**

Under the APA, this Court is authorized to review final agency actions and to:

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be--

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence . . .; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

5 U.S.C. §§ 704, 706. An agency action is considered final when it "mark[s] the consummation of the agency's decisionmaking process," and determines rights and obligations from which legal consequences flow. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997) (internal citation and quotations omitted). The agency action "must not be of a merely tentative or interlocutory nature." *Id.*

Plaintiffs challenge "Defendants' revocation of the I-140 petition" and resulting denial of their I-148 adjustment applications on the basis that Alzubidi was coerced into withdrawing the I-140. (Doc. 347 at 21-25.) Defendants are entitled to summary judgment, however, because neither the automatic revocation of the I-140 petition nor the original denials of Plaintiffs' I-485 adjustment applications are final agency actions. Instead, in August 2013, USCIS withdrew its decision denying Elgamal's adjustment application and allowed him to apply for adjustment based on new qualifying employment after noting its error in failing to advise Elgamal of the INA's porting provisions. This process culminated in a new, October 2014 decision denying Plaintiffs' adjustment applications on several grounds, including some wholly independent of

1 Alzubidi's withdrawal of the I-140.  Plaintiffs do not challenge this October 2014
2 decision and, therefore, are not challenging a final agency action.  *See Bhasin v. U.S.*
3 *Dep't of Homeland Sec.*, 413 F. App'x 983, 985 (9th Cir. 2011) ("Because [USCIS]
4 vacated its September 15, 2008 denial of the I–130 visa petition filed by [plaintiff's]
5 then-wife, . . . the denial is not a 'final agency action' under 5 U.S.C. § 704 and is not
6 subject to judicial review under the [APA].").

7 Citing *ANA International Inc., v. Way*, 393 F.3d 886 (9th Cir. 2004), Plaintiffs
8 argue that the revocation or denial of a visa petition is judicially reviewable. (Doc. 347 at
9 16.)  Plaintiffs miss the point.  The revocation or denial of a visa petition is judicially
10 reviewable under the APA only if that decision is final.  The automatic revocation of
11 Elgamal's I-140 and resulting denials of Plaintiffs' I-485 applications are not final agency
12 actions in light of USCIS's decision to withdraw those actions and re-open the I-485
13 adjudications pursuant to 8 U.S.C. § 1154(j).

14 Moreover, even these actions could be deemed final, Defendants are entitled to
15 summary judgment because no reasonable jury could conclude that Alzubidi felt
16 pressured or coerced to withdraw the I-140 petition.  In its July 14, 2016 order granting
17 summary judgment for Defendants Rebecca Bernacke and Cynthia Harper, the Court
18 found that "no reasonable jury could conclude that Alzubidi felt pressured or coerced to
19 withdraw the I-140" because "Alzubidi has repeatedly denied feeling pressured, harassed,
20 threatened, coerced, or intimidated into withdrawing the I-140."  (Doc. 389 at 17-18.)
21 Citing evidence that is subject to multiple levels of hearsay objections, Plaintiffs argue
22 that USCIS agents told Alzubidi that his business would be scrutinized more closely if he
23 continued to sponsor Elgamal's employment because Elgamal was suspected of marriage
24 fraud.  Assuming this is true, however, it is undisputed that the agents' actions did not
25 affect Alzubidi's decision to withdraw the I-140 in the manner Plaintiffs allege.  Rather,
26 Alzubidi testified that he made the decision to withdraw the I-140 independently and of
27 his own free will, and that he did not feel pressured, coerced, or threatened to do so.
28 (Doc. 333, ¶¶ 16-17.)  Alzubidi had the right to withdraw the petition for whatever reason

and at any time, unless and until Plaintiffs' statuses were adjusted. 8 C.F.R. § 103.2(b)(6). Once the petition was withdrawn, 8 C.F.R. § 205.1(a)(3)(iii)(C) required that USCIS revoke its prior approval, subject only to the INA's porting provisions.

Because Defendants are entitled to summary judgment on Plaintiffs' APA claim, Plaintiffs are not entitled to relief under the DJA. *See Countrywide Home Loans, Inc. v. Mortgage Guar. Ins. Corp.*, 642 F.3d 849, 853 (9th Cir. 2011) (noting that "the DJA expanded the scope of the federal courts' remedial powers," but did not create an independent basis for federal jurisdiction). Nor are Plaintiffs entitled to an order directing USCIS to adjust their statuses *nunc pro tunc*.[3]

## CONCLUSION

For the foregoing reasons, Defendants are entitled to summary judgment on all claims against them.

**IT IS ORDERED** that Defendants' motion for summary judgment, (Doc. 332), is **GRANTED** and Plaintiffs' cross-motion for summary judgment, (Doc. 347), is **DENIED**. There being no remaining parties or claims, the Clerk is directed to enter judgment in favor of all Defendants and against all Plaintiffs on all claims, and to terminate this case.

Dated this 25th day of July, 2016.

Douglas L. Rayes
United States District Judge

---

[3] To the extent Plaintiffs ask this Court to order USCIS to reinstate the I-140, it is undisputed that Alzubidi no longer wishes to sponsor Elgamal for employment. Plaintiffs cite no authority permitting this Court to order a private employer to sponsor an immigrant's work visa when the employer has chosen to withdraw such sponsorship.